FILED

2017 NOV 13 PM 2:06

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF ATTILA NAGY | CASE NO.: **1:17 MJ 3283**<br><br>USDJ NO.: 326-1-NHO<br><br>**MAG. JUDGE PARKER**<br><br>COMPLAINT<br><br>**TO BE FILED UNDER SEAL** |

COMPLAINT
(18 U.S.C. § 3184)

I, Om M. Kakani, Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter I represent the United States in fulfilling its treaty obligation to Romania.

2. There is an extradition treaty in force between the United States and Romania, Extradition Treaty Between the United States of America and Romania and the Protocol to the Treaty Between the United States of America and Romania on Mutual Legal Assistance in Criminal Matters, U.S. - Rom., September 10, 2007, S. TREATY DOC. NO. 110-11 (2008)

(collectively referenced hereafter as the "Treaty").

3. Pursuant to the Treaty, the Government of Romania has submitted a formal request through diplomatic channels for the extradition of Attila Nagy ("Nagy") who is wanted to serve a sentence of three years and four months' imprisonment.

4. According to the information provided by the Government of Romania, Nagy was indicted for both the offense of complicity to fraud, in violation of Article 26 of the Romanian Penal Code, in conjunction with Article 215(2) and (3) of the Penal Code, and the offense of complicity to intellectual forgery, in violation of Article 289(1) of the Romanian Penal Code, in conjunction with Article 26 of the Penal Code. Nagy was tried, in absentia, for having violated Article 26 in conjunction with Article 215(2) and (3) of the Penal Code, and Article 26 in conjunction with Article 289(1) of the Penal Code with the application of Article 33(a) of the Penal Code. The Local Court of Oradea issued a judgment for a suspended sentence against Nagy of 3 years imprisonment with supervision for a probation period of 6 years. The penal judgment became final because it was not appealed. The Local Court of Oradea reconsidered its decision and revoked the conditional service of the suspended sentence for both indictments after Nagy's lack of compliance with the terms of the supervised suspended sentence. The Court restored the original sentences, merging the two separate sentences into one and adding an additional 4 months of imprisonment. On May 25, 2012, the Local Court of Oradea issued a detention order that Attila Nagy serve 3 years and 4 month imprisonment.

5. Attila Nagy was part of a group of co-conspirators who staged fake traffic accidents in Hungary and mislead a Hungarian insurance company into paying claims that resulted from fraudulent traffic collisions. Nagy was the subject of two indictments in the Local Court of Oradea – Bihor County for case numbers 150/P/2003 and 87/P/2004. In both instances,

2

Nagy's fraudulent conduct included the procurement of an insurance card in Romania, known as a "green card", which indemnifies any insurance company in an EU member state that pays claims for collisions caused by Romanian residents. A green card insurance policy protects the insured party against possible damages caused in a traffic accident as a result of negligent conduct by another person. Motor vehicles driven within the EU must be insured against damages caused to third parties. The insurance company will only compensate the third party if the accident occurred on the territory of another EU member state and the holder of the green card insurance policy is at fault. As previously stated, the "at fault" green card holder's insurance company will indemnify the insurance company for the not-at-fault car owner.

6. In case number 150/P/2003, the facts are as follows: On February 13, 2000, in Hungary, a car driven by Ferenc Mate, with registration plate BH-03-HHH, allegedly failed to comply with the traffic regulations at the intersection of Derkovics Gyula Street and Komjath Street and collided with a BMW driven by Gyula Skhleiner. Ferenc Mate was insured by Romanian insurance company S.C. Grupil de Asigurari Roman - Grup A.s. S.A. ("Grup A.s. S.A.") Gyula Skhleiner was insured by Hungarian insurance company Mabisz Gki Budapest. The police report which stated that Ferenc Mate caused the accident was based upon false information given to the Hungarian police. Ferenc Mate also told inspectors at Grup A.s. S.A. that he was involved in a traffic accident on February 14, 2000. Consequently, Grup A.s. S.A. paid 2,923,184 forints ($10,897.25 USD) to Mabisz Gki Budapest to indemnify the Hungarian insurance company for its payment to policy holder Gyula Skhleiner.

7. Ferenc Mate subsequently admitted that neither he nor the car he was allegedly driving were in Hungary on February 14, 2000. The car did not leave Romania until February 15, 2000. According to Ferenc Mate, he got to know Attila Nagy through his brother-in-law and at

3

the request of Attila Nagy, Ferenc Mate concluded a green card insurance policy for the car. Ferenc Mate gave Nagy a copy of the insurance policy, his identity documents and a copy of the car-related documents. The documents and the insurance card remained with Attila Nagy for an undisclosed period of time. Prosecutor Cercel Saşa of the Prosecutor's Office attached to the Oradea Court of Appeals in the Indictment states that Nagy delivered the documents he obtained from Ferenc Mate "to be used by the police officers from the Republic of Hungary for the conclusion of the report acknowledging the collision." (Indictment page 7).

8. In case number 87/P/2004, the facts are as follows: According to a Hungarian Police report, on March 10, 2001, a Ford escort, with registration plate SJ-16-ADI, driven by Romeo Vasiliu, collided with a Honda Civic driven by Istvan Micalyfi at the intersection of Bern Street and Erdosar Street in Gyal, Hungary. Romeo Vasiliu was allegedly guilty for having caused the accident. The accident report was false. According to Romeo Vasiliu, he went to Budapest on March 10, 2001, where he was contacted by Attila Nagy, who asked for his car, the car documents, the insurance "green card" and Vasiliu's identity documents. Vasiliu gave Nagy the documents and his car. When Nagy subsequently returned with the car, according to Vasiliu, the car had no trace of any damage caused by a collision. Nonetheless, Romeo Vasiliu signed the accident report attesting that the car was involved in a collision. The accident report caused Mabisz Gki Budapest to pay Istvan Micalyfi the amount of 1,897,580 forints ($7,073.93 USD) after which Mabisz Gki filed an indemnity claim against Grup A.s. S.A.

9. In regards to dual criminality, the conduct for which Nagy's extradition is sought in Romanian, namely complicity to fraud, would constitute the crime of conspiracy to commit fraud under federal law. The Romanian crime of intellectual forgery is analogous to the Ohio statute crime of making a false statement to a public official. This crime is a misdemeanor

4

offense in Ohio; however, it may still be an extraditable offense pursuant to Article 2(5) of the 2007 U.S.-Romania Extradition Treaty. If extradition is granted for the felony fraud offenses then this provision of the Extradition Treaty allows for the extradition of an additional offense that is punishable by less than a year's imprisonment provided all of the other elements of extradition are met.

10. Nagy was not present for his trial or conviction, nor at the issuance of the penal judgment. He failed to appear in court at any time thereafter.

11. Attila Nagy has been located at 3171 Forest Lake Drive, Westlake, Ohio, 44145.

12. Michael Jacobsohn, an attorney in the Office of the Legal Adviser of the United States Department of State, has provided the Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the extradition treaty between the United States and Romania, stating that the offenses for which extradition is demanded are covered by the treaty, and confirming that the documents supporting the request for extradition bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of Romania, in accordance with Article 10 of the Extradition Treaty so as to enable them to be received in evidence.

13. The declaration from the Department of State with its attachments, including a copy of the diplomatic note from Romania, a copy of the Treaty, and the certified documents submitted in support of the request, (marked collectively as Government's Exhibit #1) are filed with this complaint and incorporated by reference herein.

14. Nagy would be likely to flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed

person be issued in accordance with the Extradition Treaty between the United States and Romania, and 18 U.S.C. § 3184, so that the fugitive may be arrested and brought before this court, "to the end that the evidence of criminality may be heard and considered" and that this complaint and the warrant be placed under the seal of the Court until such time as the warrant is executed.

_____
ASSISTANT UNITED STATES ATTORNEY

Sworn to before me and subscribed
in my presence this 13 day of November
2017, at 2:05 p.m.

_____
THOMAS M. PARKER
UNITED STATES MAGISTRATE JUDGE

6